# U.S. BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

_____

In re:
ANTHONY LARRY FARRAGHER-GEMMA; SHEILA FARRAGHER; MICHAEL JOSEPH FARRAGHER

Chapter 7 Case No. 14-13596
Chapter 7 Case No. 14-14813
Chapter 13 Case No. 14-14810
Adversary Proceeding No.

Debtors

_____

## DEBTORS' ADVERSARY PROCEEDING SEEKING TO STRIKE THE CREDITOR'S CLAIM IN FULL AND STAY ANY AND ALL ATTEMPTS BY CREDITOR ROBERT ENGLEBY TO FORECLOSE

To the Honorable Frank J. Bailey, Bankruptcy Judge:

Now respectfully represents Sheila Farragher a/k/a Sheila Farragher-Gemma, Anthony Larry Farragher-Gemma, and Michael Joseph Farragher (hereinafter "Debtors") and submit this adversary proceeding seeking to strike the creditor Robert Engleby's ("creditor") claim in full and to stay any and all attempts by the creditor to foreclosure on Debtors' properties, 6-8 Morgan Place, Newton, MA, and 30 Oriole Rd, Mefield, MA ("subject properties").

In support hereof, the Debtor states the following:

## FACTS

1. In November 2007, Cherry Hills Apartments of Fort Worth, LLC, a Colorado limited liability company ("Cherry Hills") and Clear River Partners, LLC, a Massachusetts limited liability company ("CRP") entered

into a purchase and sale agreement ("PSA") under which Cherry Hills agreed to sell and Clear River agreed to purchase real property containing an apartment complex commonly known as Cherry Hills Apartments and/or Granbury Hills, located in Fort Worth, Texas.  The Defendant, Robert T. Engelby executed the PSA as Manager of Cherry Hills.

2. In connection with its payment obligations under the PSA CRP agreed to assume the unpaid principle balance of Cherry Hill's prior loan related to the property in the original amount of $3,481,000.00 (the "loan") with Wilmington Trust Company ("Wilmington").

3. On February 15, 2008, Clear River assigned its rights and obligations of the PSA to FW Cherry Hills, a Massachusetts limited liability company ("FW").  As part of this sale Thomas L. Engelby agreed to guarantee the loan obligations to the lending institution and the Plaintiffs as principles of FW agreed to and signed an Indemnity Agreement  between themselves and Thomas L. Engelby.

4. As part of the Indemnity Agreement the Plaintiffs agreed to indemnify Thomas L. Engelby against all liabilities in relation to Thomas L. Engelby's obligations under the loan.

5. Plaintiffs in connection with the Indemnity Agreement agreed to secure the Indemnity Agreement through a mortgage lien (the "Mortgage") placed on the subject property of 6-8 Morgan Place, Newton, MA and 30 Oriole Rd, Medfield, MA in connection with the Indemnity Agreement.

6. Thomas L. Engelby's rights pursuant to the Indemnity Agreement and Mortgage have been subrogated to Robert T. Engelby, the Defendant in this adversary proceeding.

7. The Debtors entered into the Credit Agreement and Mortgage in reliance upon representations and warranties made by the Defendant in the parties' Purchase and Sale Agreement ("PSA").

8. The Debtors would not have entered into the Credit Agreement and Mortgage unless Creditor, Co-defendant in the Texas litigation Charles T. Dobens ("Dobens") and Kathleen Dobens, and Joseph Roche, made these representations, including but not limited to assurances about existing leases, rent rolls and the financial statements regarding the apartments.

9. At or around the end of 2005 Sheila Farragher and co-defendant Jeremy Shapiro held an investment meeting at their real estate practice in Dedham, MA and Attorney Charles T. Dobens attended them, which is where the parties became acquainted.

10. In 2006 Sheila Farragher and Jeremy Shapiro entered into their first real estate deal with Dobens spearheading it, and Sheila Farragher and Jeremy Shapiro lost their $25,000.00 investment and have heard nothing since from Dobens.

11. On October 10, 2007 Charles Dobens presented a 'deal' to the Debtors and asked if they 'are ready to buy a property.' (see attached Exhibit "A").

12. Debtors co-defendant Mr. Charles T. Dobens, a Massachusetts attorney, was in charge of orchestrating the deal with Mr. Robert Engleby, the seller.

13. Debtors co-defendant Mr. Charles T. Dobens, a Massachusetts attorney, was in charge of orchestrating the deal with Mr. Robert Engleby, the seller.

14. To date, Dobens has not Answered the Texas Complaint or Discovery and is otherwise a non-party to the suit.

15. The only person who has the material fraudulent documentation or claims to have it is Dobens, who has refused to cooperate in any way shape or form.

16. The Debtors learned after the sale of the building that Engleby provided to Dobens rent rolls and occupancy information that was false and fraudulent. By way of example and not limitation, Engleby provided certified rent rolls to Dobens, and to the bank that provided financing, that represented that the apartments were more than ninety percent occupied at the time of sale. However, this was false. The Debtors learned after the sale that the actual occupancy of the apartments was just over fifty percent. Dobens refuses to give us this documentation.

17. This intentional misrepresentation violated the covenants, representations, and promises made by the Defendant in the PSA, which states, in pertinent part, that:

   a. "Copies of the Tenant Leases to be made available for Buyer's inspection shall be true and accurate copies thereof…." See PSA §11.01(d);

   b. "…such Tenant Leases are in full force and effect…" *Id.*

18. The Tenant Leases provided by the Defendant under this provision were intended to make the defendants believe that the apartments were more than ninety percent occupied.

19. The Plaintiffs desire to enter the PSA, Indemnity Agreement, and Mortgage were expressly conditioned upon the representations and warranties of the Defendant to be true, accurate, and correct on the date of signing.  Due to the fact that those representations were intentionally false and fraudulent the Plaintiffs had the right to rescind the contract in order to remedy the fraudulent misrepresentation.  The Plaintiffs did notify the Defendant of the fraud, and rescission of the contract.

20. On November 13, 2013, the Creditor initiated the Texas Action seeking damages against among other parties the Debtors for an alleged breach of contract with the Creditor, Cause No. 017 269209 13 in Tarrant County, Texas (see "Exhibit A").

21. The Debtors in this action have filed an Answer and Counterclaim in the Texas Action with claims including fraud, misrepresentation, fraudulent concealment, and fraudulent misrepresentation, fraud in a real estate transaction, breach of contract, declaratory relief, and injunctive relief ("Exhibit B").

22. On March 6, 2014, after filing the Texas Action, Creditor initiated a Complaint under the Servicemembers Civil Relief Act in Massachusetts beginning the foreclosure process on the subject property.

23. If Defendant is allowed to foreclosure on the subject property Plaintiffs will suffer irreparable harm by the loss of the subject property.

## ARGUMENT

24. Creditor fraudulently sold to the Debtors a dilapidated housing project (see attached "Exhibit C") and came to this Court with unclean hands seeking to perpetrate a fraud on the Court and obtain relief from the stay to foreclose on the subject properties.

25. Debtors are in bankruptcy primarily because of the real estate deal they transacted with Creditor Robert Engleby in Tarrant County, Texas.

### Co-defendants Charles T. Dobens, Kathleen Dobens, and Joseph Roche

26. Debtors' co-defendants Charles T. Dobens, Kathleen Dobens, and Joseph Roche negotiated the deal with Engleby and were present at the site visits and inspections.

27. On October 10, 2007 Charles Dobens presented a 'deal' to the Debtors and asked if they 'are ready to buy a property.' (see attached Exhibit "D")

28. Debtor Michael Farragher and his wife put up $50,000.00, and investors put up $509,300.00 to enter this deal, which they have subsequently lost.

29. Upon information and belief, $630,000.00 was raised in total and paid as a down payment for the purchase of Granbury Hills, the Texas subject property.

30. Engleby assigned the $3.5 million dollar mortgage and note on the property to Debtors.

31. Upon reasonable belief, all of the investors have lost their investments as well.

32. The following is the list of investors that were brought in by Clear River Partners, a company that created Cherry Hills Apartment, LLC which was made up of Sheila Farragher, Jeremy Shapiro, Charles T. Dobens, Kate Dobens, and Joseph Roach.

| First | Last | $ Committed | Date OA Signed |
|---|---|---|---|
| George | Selibas | $25,000 | |
| John | Pannell | $50,000 | 1/31/2008 |
| Gary | Pickett | $46,550 | 1/24/2008 |
| David | Jellison | $10,480 | 1/24/2008 |
| David | Jellison | $24,520 | 1/28/2008 |
| Geraldine | Farragher | $20,000 | 1/31/2008 |
| John | Leary | $50,000 | 1/31/2008 |
| Michael | Farragher | $30,000 | 1/31/2008 |
| Barbara | Leon | $50,000 | 1/29/2008 |
| Melissa | Goldbach | $25,000 | 1/30/2008 |
| Deb | Hadaway | $30,000 | 2/25/2008 |
| Cal | Groton | $32,750 | 1/25/2008 |
| Rob | Courtemanche | $40,000 | 2/4/2008 |
| Marlena | Arnold | $50,000 | 2/5/2008 |
| Lisa Marie | Stearns | $25,000 | 2/25/2008 |
| Luis | Duran | $50,000 | 2/21/2008 |

33. We believe that the Dobens' and Engleby devised, schemed, and executed a fraudulent conveyance to the Debtors and all the other investors. They led Debtors and investors to believe the property would have 22% returns as indicated in Exhibit A, by falsely representing rent rolls and condition of the property, but after the purchase and sale Debtors learned the property was barely rented, and littered with drugs and crime.

34. The stated 95% occupancy was actually 50% with only about 20% actually paying rent.

35. Debtors upon learning that the Building they had purchased in Texas was a dilapidated housing project and accounting for the low returns, could no longer afford to may the mortgage and note.

36. Engleby, who had received $630,000.00 from Debtors and investors, paid $600,000.00 to Wilmington to secure the loan, but they called it back when Debtors defaulted on the $3.5 million dollar assigned mortgage.

37. Creditor subsequently filed a Complaint against Debtors, Cherry Hills Apartment, LLC, Charles T. Dobens, and Jeremy Shapiro, in Tarant County, TX.

### Dobens' Refusal To Answer the Complaint, Discovery or Otherwise Cooperate, and Creditor's Failure to Default Dobens

38. The only person who has the material fraudulent documentation or claims to have it is Dobens, who has refused to cooperate in any way shape or form.

39. To date, Dobens has not Answered the Texas Complaint.

40. Dobens has refused to answer Debtors and Co-defendants Production of Document Requests.

41. Dobens has refused to agree to a Deposition.

42. Dobens has refused to help in anyway at all unless Debtors and Co-Defendants give him an Indemnity and Immunity deal (which is referenced further along in this pleading) which gives us reason to believe he is part of the underlying scheme of fraud as well, and otherwise an opposing party in this matter.

43. Dobens in October 2014 indicated to Counsel for the Debtors that he has eight "phantom leases" evidencing the fraud committed by Robert T. Engleby.

44. Dobens, a co-defendant in the Texas lawsuit is unfairly witholding the smoking gun evidence of fraud that would enable debtor and other co-defendants to obtain a Temporary Restraining Order.

45. Dobens informed counsel he has fabricated leases evidencing trumped up rent rolls, but co-defendant will not disclose said fabricated leases and supporting documentation without forcing Debtor to seek court intervention, or agree to an unreasonable Indemnification and Immunity deal.

**Doben's Demand for Immunity and Indemnification**

46. Instead, in October 2014 Dobens has demanded an Indemnification and Immunity Agreement ("I&I") (see Exhibit "E") from the Debtors in exchange for his "fraudulent documents" or smoking gun.

47. Debtors entertained the idea of the I&I with Dobens and almost agreed to sighn it so that they could obtain the fraudulent documents and otherwise defend the Engleby lawsuit in Texas, and pursue their counterclaims of Fraudulent Misrepresentation, Declaratory Relief, and Injunctive Relief.

48. The I&I is so lop-sided that Debtors could not agree to it.

49. The I&I is too large in scope so Debtors cannot agree to it. There are two other cases that may be coming down the pipeline against the Debtors and Dobens, and Dobens demanded indemnity on all three (3) cases and any future cases.

50. Immediately after Cherry Hills/Granbury Hills development, CRP purchased a 222 unit complex in Kentucky called Preakness. All five members of CRP signed a personal guarantee for the mortgages. To date we believe that this has not been paid, there is zero communication from Dobens on this or anything (see attached Exhibit "F").

51. CrossCreeks is a project in Kentucky that is still being managed by Dobens, who has provided no insight to debtors as to what is occurring with that property. In about 2010, Sheila Farragher-Gemma and co-defendant Jeremy Shapiro signed over their shares to the investors so that they could reinvest in preakness which was in trouble at that point.

Sheila Farragher-Gemma and Jeremy Shapiro remain indebted on a non-recourse mortgage and personal guarantee (see attached "Exhibit G").

52. Foreclosing on Debtors' properties would be fraudulent considering the scenario we described above, and would be further devastating to Debtors and their families.

### Debtors' Hardship

53. Tony Farragher and his brother Robert inherited 6-8 Morgan Place, Newton, MA from their father, and it is the family home that they grew up in. It has been in the family for generations.

54. Sheila Farragher and Tony Farragher are married and live in 30 Oriole Rd, Medfield, MA.  They would lose their family home where one of their two children still lives and be put out on the street. Their father Michael Farragher owns the property and would suffer serious financial hardship if the property was foreclosed on as it his only substantial asset.

55. The Debtors have worked their whole life, paid their bills, accumulated little debt, and built up some equity in their homes that they planned on using for retirement. They have always been upstanding citizens, leaders in their community and contributors to society.

56. In 2008 along with their business partners Debtors purchased the subject 114 unit apartment building in Ft. Worth, Texas. Late in the negotiations, just before closing the deal the bank came back with a requirement for a $600,000 line of credit to be in place.  It looked like they would not be able

to close the deal and that the seller would get to keep their entire deposit. The seller, Robert Engleby, came forward and offered to secure the line of credit to make the deal go through.  In return for this Debtors put up their property as collateral.

57. At the time Debtors were assured by their partners, in particular the Dobens' and Joseph Roach that even in the unlikely event that the investment failed, it would never get to the point where the collateral would be in jeopardy. Once the parties closed on the property, Debtors found out that it was not even close to what the seller had represented.  The stated 95% occupancy was actually 50% with only about 20% actually paying rent.

58. Upon information and belief, tenants at the Building told Debtors they had been told they could live there rent free as the property changed ownership. Debtors discovered fraudulent leases, a meth lab on the property and severe problems with the water supply which resulted in water bills in excess of $50,000 per month.  The property was so dangerous that the police would not respond and Debtors ended up having to hire and pay for a private security firm.

59. After struggling with the property and investing personal funds into the property for over a year, Debtors eventually lost it to foreclosure. Shortly after that the partnership ended as well. The seller, who had already been paid $120,000 of the $600,000 line of credit, was now liable for the $480,000 balance.

60. To date Debtors have paid attorney fees, totally depleted their savings and ruined their credit by having to file for bankruptcy. If the foreclosures are allowed to go through Debtors will already have lost before they even get a chance to prove the fraud.

### **Creditor Robert Engleby's Unclean Hands**

61. Creditor sued the Debtors in Texas Court on November 13, 2013, but he wants his cake and to eat it too.

62. Subsequently Creditor, with unclean hands, hired a foreclosure law firm to foreclose on the subject properties, 6-8 Morgan Place, Newton, MA and 30 Oriole Rd, Medfield, MA.

63. Further, Engleby has violated M.G.L. c. 231 § 6 by seeking to foreclose on the property in bad faith based upon a fraudulently obtained mortgage partially in an effort to gain an unfair and deceptive advantage in the pending Texas Action.

64. Dobens recently suggested to Debtors through counsel that he has evidence of fraud, manufactured and forged leases, but he refuses to provide the documents to Debtors, Co-defendants, or Counsel.

65. Dobens could verify that the rent rolls indicating tenancy of the building was 50% less than what Engleby represented to Debtor before purchase and sale, but Dobens refuses to cooperate.

66. Before forming CRP, Debtor and Co-Defendant Jeremy Shapiro invested $25,000 in a property owned by the Dobens' called CrossCreeks, and have heard nothing back from Dobens' and believe the funds are lost.

### **Debtors' Dilemma**

67. Debtors through counsel seek to depose Dobens and to obtain the smoking gun evidence, but the Automatic Stay in effect prevents us from doing so.

68. Creditor's Texas Counsel, Wick Phillips Gould & Martin, LLP, will not assent to allow us to subpoena Dobens or Joseph Roach as there is currently an Automatic Stay in place.

69. Your Honor has allowed the Creditor, Mr. Engleby, Relief from the Automatic Stay, and subesequently denied our Motion to Reconsider because we do not have the Fraudulent documentation, or "smoking gun" that would give the Court reason to maintain the Automatic Stay previously, and should Creditor file for it again.

70. Since Dobens will not cooperate, Debtors are in a Catch 22. Engleby's foreclosure attorneys are trying to foreclose on the collateral and subject properties so that we need the Automatic Stay in place. Meanwhile, with the Automatic in Stay in place we cannot depose Dobens, as Texas Counsel for Engleby has indicated to us.

**Value of the Properties and Adequate Protection**

71. Aside from Robert Engleby's lien on 6-8 Morgan Place, the debtor only has a $30,000.00 Sovereign Bank lien on the property.

72. The 6-8 Morgan Place property is valued at approximately $494,582.00

73. Thus, aside from the Engleby lien, there is $464,582.00 in equity in the property.

74. The property is necessary for an effective reorganization because it is debtor's sole asset that has any substantial value whatsoever.

75. If the debtor is potentially discharged of the Engleby debt, he would be effectively reorganized and manage to keep the property.

76. The Debtor and his brother/co-defendant in the Engleby lawsuit in Texas own the subject property. Debtor's brother would be unduly harmed if the property was foreclosed on.

77. Pursuant to 11 U.S. Code § 361 (2) Debtor would be willing to provide Engelby an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; and

78. Debtor is willing to either pay or escrow monthly adequate protection payments in the amount of $3,000.00 to reinstate the stay.  The movant sold to the Debtor a dilapidated housign project and therefore came to this Court seeking relief from the stay with unclean hands

79. Pursuant to 11 U.S. Code § 361 (3) Debtor would assent to granting such other relief as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

80. Aside from Robert Engleby's lien on 30 Oriole Place, Medfield, MA, the debtor Michael Farragher has a $189,218.00 mortgage, and $100,000.00 HELOC that Debtors Sheila Farragher and Tony Farragher, the residents of said property, make the monthly patments on.

81. The 30 Oriole Place is valued at approximately $625,000.00

82. Thus, aside from the Engleby lien, there is $335,782.00 in equity in the property.

83. The property is necessary for an effective reorganization because Sheila and Tony Farragher reside their, and it is Michael Farragher's sole asset that has any substantial value whatsoever.

84. If the debtors are potentially discharged of the Engleby debt, he would be effectively reorganized and could afford to keep the property.

85. Pursuant to 11 U.S. Code § 361 (2) Debtors would be willing to provide Engelby an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; and

86. Debtors are willing to either pay or escrow monthly adequate protection payments in the amount of $3,000.00 to reinstate the stay.

87. Pursuant to 11 U.S. Code § 361 (3) Debtor would assent to granting such other relief as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

WHEREFORE, for all the reasons set forth and enumerated above, the Debtor requests that the above relief be granted, and that this Honorable Court grant a Temporary Restraining Order preventing the Creditor Robert Engleby from foreclosing while this Adversary Proceeding progresses, Striking the Creditor Robert Engleby's claim, Order Dobens to comply with his Discovery Obligations, Stay the pending Texas Action,and for such other relief that this Honorable Court deems appropriate and just.

Respectfully submitted,
Sheila Farragher,
Anthony Larry Farragher-Gemma, and
Michael Joseph Farragher
By their attorney,


/s/ Simon B. Mann
_____
Simon B. Mann
Mann Law Firm, PC
1071 Worcester Rd., Ste 42
Framingham, MA 01701
BBO # 665301
simon@sbmannlaw.com

Dated:  November 14, 2014

ORDER

_____       The Request is denied


_____       The Request is approved.


Date:

_____
United States Bankruptcy Judge,
Honorable Frank J. Bailey, Bankruptcy Judge


CERIFICATE OF SERVICE

I, Simon B. Mann, state that on November 14, 2014, I electronically filed the foregoing Adversary Complaint and Request for Temporary Restraining Order with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System. I served the foregoing document on the following CM/ECF participants:

By CM/ECF:

**John Fitzgerald**
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

*Trustee*
**Mark G. DeGiacomo**
Murtha Cullina LLP
99 High Street
Boston, MA 02110

**Sarah B. Gullon**
Shechtman Halperin Savage, LLP
1080 Main Street
Pawtucket, RI 02860

Bob Little, Esq.
Naman, Howell, Smith & Lee, PLLC
400 Austin Avenue, Suite 800
P.O. Box 1470

Waco, Texas 76703-1470
K. Todd Phillips
Angelique Linville
Wick Phillips Gould & Martin, LLP
2100 Ross Avenue, Suite 950
Dallas, TX 75201

/s/ *Simon B. Mann*
_____
Simon B. Mann